IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 11-cv-03156-CMA-BNB

PAUL FANN, and
LENORE FANN,

Plaintiffs,

v.

THE HARTFORD UNDERWRITERS INSURANCE COMPANY,

Defendant.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

This matter arises on the following:

(1)     **Defendant Hartford Underwriters Insurance Company's Motion for Issue Sanctions and Attorneys' Fees Under Federal Rule of Civil Procedure 37(b) for Plaintiffs' Continuing Violations of the Court's June 28, 2012 Discovery Order** [Doc. # 42, filed 10/2/2012] (the "Motion for Sanctions"); and

(2)     **Supplement to Defendant Hartford Underwriters Insurance Company's Motion for Issue Sanctions and Attorneys' Fees Under Federal Rule of Civil Procedure 37(b) for Plaintiffs' Continuing Violations of the Court's June 28, 2012 Discovery Order** [Doc. # 58, filed 11/12/2012] (the "Supplement to Motion for Sanctions").

I held a hearing on these motions on January 8, 2013, and took the matter under advisement.  After a thorough review of the motions, responses, exhibits, and court file as a whole, I conclude and respectfully RECOMMEND that the Motion for Sanctions and Supplement to Motion for Sanctions be GRANTED.

# I. BACKGROUND

The plaintiffs bring claims for underinsured motorist ("UIM") benefits against their

insurer, Hartford Underwriters Insurance Company ("Hartford Insurance").  The facts underlying

the claim are summarized in the Scheduling Order [Doc. # 17]:

> This case arises out of a two car motor vehicle accident which
> occurred on December 6, 2008.  The accident occurred when the
> 1994 Mitsubishi 3000 GT driven by Susan Visalli pulled out from
> a private drive onto Gun Club Road and struck the 2008 Dodge
> Ram 1500 in which Paul and Lenore Fann were riding.  Ms. Visalli
> failed to yield the right-of-way and was the sole, proximate cause
> of the accident.  Both Mr. and Mrs. Fann suffered significant
> injuries as a result of the accident.
>
> Ms. Visalli's insurance company, Progressive Insurance tendered
> its available policy limits in the amount of $25,000/$50,000 to
> Paul and Lenore Fann.  Defendant was informed that the policy
> limits were insufficient to compensate them for their injuries and
> Defendant was requested to provide a specimen copy of the policy
> to inform[] Plaintiffs of any limitations on their ability to settle the
> underlying claim.  Defendants delayed six months in providing a
> copy of the policy and further did not provide any information or
> restrict Plaintiffs' ability to settle the underlying case.  Further,
> Defendant failed to tender $50,000 in the amount of the underlying
> coverage, which was its right in order to pursue any recovery
> against Mr. Visalli.

Id. at Part 3(a).

Hartford Insurance denies liability, asserting that the plaintiffs failed to comply with the

terms of their UIM policy by failing to give notice as required:

> Plaintiffs do not have a valid claim for UIM benefits under the
> policy.  Plaintiffs' counsel did not make any such claim for
> benefits until after Plaintiffs had already settled all of their
> personal injury claims against the underlying tortfeasor and given
> the tortfeasor a release of all claims.  Plaintiffs did not inform
> Hartford in advance that they intended to release the tortfeasor of
> all liability, nor did Plaintiffs ask Hartford in advance to consent to
> such a settlement or otherwise give Hartford an opportunity to

2

> preserve its subrogation rights.  Plaintiffs' conduct violated the
> policy's notice-of-settlement provision, which required Plaintiffs
> to give [Hartford] an opportunity to preserve its subrogation rights.
> Compliance with the notice-of-settlement provision is a condition
> precedent to receiving any UIM benefits under the policy.
> Plaintiffs' actions preclude their claim for UIM benefits.

Id. at Part 3(b).

On February 24, 2012, Hartford Insurance served discovery on the plaintiffs.  The

discovery sought information concerning its lack of notice defense, among other things.  For

example, Interrogatory No. 1 to Paul Fann requested:

> Please identify the date(s) when you, Lenore Fann, or any of your
> or her representatives notified Hartford of the Settlement [between
> plaintiffs and Ms. Visalli] or any other tentative or final settlement
> of claims against Susan M. Visalli, and please identify each and
> every communication with Hartford in which you provided such
> notice, including by identifying any documents that constitute,
> contain, or refer to any such communications with Hartford.

Defendant's First Set of Discovery to Paul Fann [Doc. # 21-3] at p. 5.  Similarly, Interrogatory

No. 1 to Lenore Fann requested:

> Before the Settlement [between plaintiffs and Ms. Visalli]
> occurred, did anyone inform you that it was necessary to notify the
> Hartford of the Settlement in advance in order to be eligible for
> underinsured motorist benefits under the Policy?  If so, please
> identify who so informed you, the date when you were informed,
> and identify all documents that constitute, contain, or refer to the
> communications that so informed you.

Defendant's First Set of Discovery to Lenore Fann [Doc. # 21-2] at p. 5.  In addition, in

Interrogatory No. 23 to Paul Fann and Interrogatory No. 14 to Lenore Fann, Hartford Insurance

requested:

> Please identify every communication you [defined to include
> plaintiffs and their legal counsel and other representatives] have
> had with the Hartford or any of its representatives, including all

> oral and written communications, within the last five years, and
> describe as accurately as possible the exact content of each oral
> communication or each written communication that is no longer in
> your possession.

Defendant's First Set of Discovery to Paul Fann [Doc. # 21-3] at p. 10; Defendant's First Set of

Discovery to Lenore Fann [Doc. # 21-2] at p. 8.  Finally, Hartford Insurance requested that the

plaintiffs produce copies of any documents supporting their responses to the interrogatories; all

documents transmitted by and between the plaintiffs and Hartford Insurance; and all documents

"that constitute, comprise, summarize, refer to, or mention any notice or information that you

provided to Hartford about the Settlement."  Defendant's First Set of Discovery to Paul Fann

[Doc. # 21-3] at Production Requests 1, 2, 3, and 6; Defendant's First Set of Discovery to Lenore

Fann [Doc. # 21-2] at Production Requests 1-4.

The plaintiffs did not respond to the discovery requests within the time allowed under the

Federal Rules of Civil Procedure.  On May 21, 2012, Hartford Insurance filed a Motion to

Compel [Doc. # 21].  I found in connection with the Motion to Compel:

> The plaintiffs waited until after the Motion to Compel was filed to
> provide their discovery responses, and waited until the morning of
> the hearing on the Motion to Compel to provide copies of
> documents relied on pursuant to Rule 33(d), Fed. R. Civ. P.  This
> failure to make discovery in a timely manner and without the
> intervention of the court, despite the defendant's good faith efforts
> to avoid court action, is not substantially justified, nor have the
> plaintiffs articulated grounds which make the award of attorneys
> fees to the defendant unjust.

Order [Doc. # 30] at p. 1.  I granted the Motion to Compel, including an award of the reasonable

expenses Hartford Insurance incurred in bringing that motion, and required the plaintiffs to

"provide full and complete discovery responses . . . on or before July 9, 2012."  Id. at pp. 1-2.

4

Rather than comply with my Order, the plaintiffs filed a Motion for Extension of Time [Doc. # 31] seeking additional time to make the required discovery based on the press of other business occupying plaintiffs' counsel. Id. I denied the Motion for Extension of Time, finding that it was "part of the 'same pattern' of delay which necessitated [Hartford Insurance's] Motion to Compel and upon which I based my Order compelling discovery. . . ." Order [Doc. # 36] at pp. 1-2. The plaintiffs provided discovery responses on July 11, 2012 [Doc. ## 42-3 and 42-4].

On October 2, 2012, Hartford Insurance filed its Motion for Sanctions [Doc. # 42]. The Motion for Sanctions states:

> On September 2, 2012, Hartford transmitted to Plaintiff[s] an 11-page letter explaining in detail their many violations of the Court's Order. Opposing counsel responded via email, stating that he would be in touch in a "couple of days." Opposing counsel never responded. To this date, Plaintiffs have not addressed the substance of any part of Hartford's 11-page meet-and-confer letter. Plaintiffs have not provided any further discovery answers or documents. Plaintiffs have not done anything at all. After being patient with Plaintiff for months, Hartford simply cannot wait any longer to obtain relief for Plaintiffs' numerous and serious discovery defaults and their open violation of the Court's order.

Id. at pp. 4-5.

I granted in part the Motion for Sanctions on October 31, 2012, ruling:

> It is obvious that no serious attempt was made to fully and completely answer [certain interrogatories], despite my Order, and plaintiffs' counsel's argument that a complete answer would be made in a supplement is unpersuasive and fails to address why a complete answer has not been made already.

Order [Doc. # 56] at p. 2. I also cautioned plaintiffs and their counsel that I would not tolerate further delays:

> I hesitate to impose discovery sanctions which would adversely affect the plaintiffs' ability to present their case on the merits. On

> the other hand, the defendant is entitled to full and complete
> answers to its clearly relevant discovery requests.  To balance
> these interests, I will give the plaintiffs one final opportunity to
> meet their discovery obligations.  The plaintiffs and their counsel
> are warned that their failure to comply with this Order and my
> previous Order [Doc. # 30] within the time allowed will result in
> the imposition of severe sanctions.

Order [Doc. # 56] at p. 3.  I commanded the plaintiffs to remedy the discovery deficiencies

identified in the Motion for Sanctions by November 5, 2012.

## II.  THE EVASIVE AND INCOMPLETE
## DISCOVERY RESPONSES

Hartford Insurance argues in the Supplement to Motion for Sanctions [Doc. # 58] that the

plaintiffs still have not satisfied their duties to make discovery notwithstanding nine months time

and two orders of the court.  I agree.

Specifically, Hartford Insurance complains that the plaintiffs have failed to fully answer

the following interrogatories:

### A.  Interrogatory No. 1 to Paul Fann; Interrogatory No. 23 to Lenore Fann

Interrogatory No. 1 to Paul Fann requests:

> Please identify the date(s) when you . . . or any of your
> representatives notified Hartford of the Settlement or any other
> tentative or final settlement of claims against Susan M. Vasalli,
> and please identify each and every communication with Hartford
> in which you provided such notice, including by identifying any
> documents that constitute, contain, or refer to any such
> communications with Hartford.

Paul Fann's Second Supplemental Responses [Doc. # 58-2] at p. 3.  Mr. Fann answered:

> The Hartford was notified either the day of or the day after the
> accident that a claim was being pursued against Susan Visalli,
> including a settlement.  The Hartford was first notified of a
> possible UM/UIM exposure on or about November 30, 2010 by
> our attorney **and then of the settlement in January, 2011.**

6

Plaintiff further supplement this response by stating that Hartford was aware of settlement negotiations, as I understand our attorney called the Hartford to advise that he was representing us and that there was a possible underinsured motorist claim.  There were multiple letters sent to Defendant that put it on notice that there was an underinsured motorist claim, that negotiations were taking place and that the policy limits were insufficient to compensate us. The communications put Defendant on notice of the negotiations, the settlement and included a copy of the letter which confirmed settlement of the underlying claim with Shelter Insurance.  **The documents which put Defendant on notice included letters that were sent on November 30, 2010, December 2, 2010, January 14, 2011, January 25, 2011, January 27, 2011, February 16, 2011, February 22, 2011, March 9, 2011, March 15, 2011, March 17, 2011, March 25, 2011, May 25, 2011.**  Hartford is expected to have a log of these records.

It is my understanding that those dates include various letters, telephone calls, as well as e-mails were exchanged by our attorney, Timothy L. Nemechek.  Mr. Nemechek requested the Hartford to confirm medical payments coverage, to provide a specimen copy of the policy and advise the Hartford that there were ongoing settlement negotiations in the underlying case.

In addition, our attorney sent a CD on which there were medical records in the February 22, 2011 letter.  As of the date that Defendant received the February 22, 2011 letters, as well as telephone messages and other correspondence from our attorney, Hartford was on notice that an underinsured motorist claim was being made and that the underlying policy was insufficient to pay our damages.  Hartford was aware of this fact when it received copies of medical records and knew that we were receiving ongoing medical treatment, including multiple surgical procedures.

We also signed authorizations for release of medical information, including all billing records and it is my understanding that the Hartford claims file has letters that were sent out to our healthcare providers to obtain those records.

Id. at pp. 4-5 (emphasis added).

Mr. Fann has identified three documents dated in January 2011 which allegedly "put

Defendant on notice of the negotiations, the settlement and included a copy of a letter which

confirmed settlement," but he also has identified nine additional dates between November 2010 and March 2011 when notice allegedly was given.  The plaintiffs are engaged in a shell game.  To the contrary, the discovery rules require that the plaintiffs disclose the date--by month, day, and year--when they gave notice of the settlement, or that they admit that they do not know the date.

Contrary to the written discovery response, made under oath, plaintiffs' counsel in an unsworn argument stated:

> **Notification was provided to the Defendant on February 15, 2011, at which time a telephone conference occurred** between Plaintiffs' attorney of record and the adjustor assigned for Defendant.  At that time, a specimen copy of the insurance policy was requested and confirmation of the underinsured motorist claim was also requested.  Notice was provided to Defendant.  A confirmation letter was sent the following day on February 16, 2011.

Response to Motion for Sanctions [Doc. # 47] at p. 3 (emphasis added).  Significantly, the date of February 15, 2011, does not appear in the interrogatory answer.

I attempted to clarify the plaintiffs' position on the issue of notice at the hearing on the Motion for Sanctions, which resulted in the following colloquy:

> THE COURT:  . . . Mr. Nemechek, did you give notice of settlement?
>
> MR. NEMECHEK:  I did, Your Honor.  And just--
>
> THE COURT:  When did you give notice of settlement?
>
> MR. NEMECHEK:  I called the adjuster on [February] 15th[1] and

---

[1]The Transcript reports the date as "November 15th," which appears to be a typographical error.  See Transcript of Hearing, January 8, 2013 [Doc. # 78], at p. 47 lines 5-6 (indicating that the date under discussion is February 15th).

said we've settled the underlying case to insufficient limits.  And then I wrote--if you'll see on that letter it says, "This will confirm my telephone call."  That's  why, Your Honor, getting back--

THE COURT:  So, why isn't that the answer to the interrogatory?  I mean, that date--

MR. NEMECHEK:  I'll tell you why, Your Honor.  Let's--

                              *     *     *

Neither Mr. nor Mrs. Fann know the exact date.  They have copies of all the letters.

THE COURT:  But we've talked about that. . . .

You're going to put them [the plaintiffs] on the witness stand and they're going to be prepared--or you're going to put somebody on the witness stand, and that person is going to be prepared and they're going to  say the 15th.  Because you just told me that's what they're going to say.

                              *     *     *

MR. NEMECHEK:  So, to answer your question, yes, I think the insured has to--has to put the insurer on notice. . . .

THE COURT:  What will the evidence be?  You said that, yes, notice is necessary.  What will the . . . What do you anticipate the evidence of notice being and from whom?

MR. NEMECHEK:  I believe from the letters that started when I was first retained to represent the Fanns in this case.  So, November 30th, that's when I asked for a specimen copy of the policy saying, hey, there's a potential UIM claim.  That's--that's the evidence.  And what I expect the evidence to show is that there was a series of telephone calls and letters sent to the insurer by the representative, me, of the plaintiffs putting them on notice that there was a potential claim and requesting information from the insurer.  What I was greeted with was a wall of silence and no response.

THE COURT:  So, the testimony--some testimony from somebody or some evidence introduced in some manner will be your February 15th telephone call.

MR. NEMECHEK:  In the form of the February 16th letter, correct, Your Honor.

* * *

> I think that all those dates can potentially constitute notice, which
> includes the telephone conference.  Now, to answer the court's
> original question, as I'm sitting here and looking at these
> documents, I don't necessarily disagree that that--the February
> 15th date should have been included as another potential date.  I
> thought it had been included.

Transcript of Hearing, January 8, 2013 [Doc. # 78] ("Trans.") at p. 46 line 2 through p. 57 line 18.[2]  A full review of the transcript concerning plaintiffs' position concerning when and to whom they gave notice of settlement, Trans. [Doc. # 78] at pp. 46 -61, is befuddling.

At a minimum, the answer is evasive.  An evasive answer is the equivalent of a failure to answer.  Fed. R. Civ. P. 37(a)(4).[3]

---

[2]The plain language of Mr. Nemechek's letter of  February 16, 2011, does not include notice of the plaintiffs' settlement of their claim.  It states:

> This letter will confirm our telephone conference on February 15,
> 2011.  It is my understanding that you spoke to the claims adjuster
> who was assigned to this claim.  Mr. and Mrs. Fann will be
> asserting an underinsured motorists claim arising out of the
> December 6, 2008 accident.  I am requesting that you provide a
> specimen copy of the insurance policy issued by The Hartford, as
> well as written confirmation of the UM/UIM policy limits.

Letter [Doc. # 75-2].

[3]A similar interrogatory was posed to Lenore Fann:

> Interrogatory No. 23:  Please identify every communication you
> [defined to include plaintiffs and their legal counsel and other
> representatives] have had with the Hartford or any of its
> representatives, including all oral and written communications,
> within the last five years, and describe as accurately as possible the
> exact content of each oral communication or each written
> communication that is no longer in your possession.

 Defendant's First Set of Discovery to Lenore Fann [Doc. # 21-3] at p. 10.  The response (inexplicably renumbered as Interrogatory No. 12) is equally evasive:

**B.  Interrogatory No. 5 to Lenore Fann**

Lenore Fann claims damages resulting from personal injuries which she attributes to the

accident in an amount exceeding $350,000, including future medical expenses of up to $50,000.

Scheduling Order [Doc. # 17] at pp. 3-4.  Not surprisingly, Hartford Insurance posed the

following interrogatory:

> Please identify [defined to require the full name and last known
> address] every healthcare provider whom you have seen in the five
> years before the Incident and each year thereafter.

Lenore Fann's Second Supplemental Responses [Doc. # 58-1] at Interrogatory No. 7.[4]  Mrs.

Fann initially responded:

> Prior to the accident, I treated with Dr. Wright Kaiser Permanente
> and other physicians whose names I don't remember.  Dr. Ng, Dr.

---

> The written communication with the Hartford included the letters
> were regarding renewal of the insurance policies, as well as any
> telephone calls with company representatives.  I do not recall the
> exact dates of those conversations.
>
> After the accident, there were questions regarding the availability
> of coverage for medical benefits and I remember some telephone
> calls before we retained our original attorney, Janice Greening.  I
> do not recall the dates of these conversations or the individuals to
> whom I discussed, but we talked about the accident and the
> injuries.  After the attorneys were retained, communications were
> between the attorneys and the Hartford.

Lenore Fann's Second Supplemental Response [Doc. # 58-1] at  p. 16.  Here, there is no mention
at all of either the telephone call on February 15, 2011, or the letter of February 16, 2011.

[4]I am informed that the interrogatory was numbered 5 when it was served by Hartford
Insurance.  Supplement to Motion for Sanctions [Doc. # 58] at p. 8.  For unexplained reasons,
plaintiffs' counsel renumbered it as Interrogatory 11 when Ms. Fann responded, Lenore Fann's
Response to Discovery [Doc. # 26-1] at p. 9, and renumbered it again as Interrogatory 7 in her
Second Supplemental Response.  Lenore Fann's Second Supplemental Response [Doc. # 58-1]
at  p. 11.

Leo and Dr. Robertson.

After the accident, I also treated with Doctors Robertson, Loucks, Fitzgerald, Gesquire, Anderson, Eldridge, Syn, Fisch, Taylor and Chappelle.

Lenore Fann's Response to Discovery [Doc. # 26-1] at p. 9. No addresses or telephone numbers were provided. I found the response to be inadequate and ordered Mrs. Fann to supplement her answer, stating:

> Ms. Fann has failed to identify by full name, present or last known address, and telephone number the healthcare providers she has seen in the five years before the accident at issue in this case and each year thereafter. . . . The response given by Ms. Fann to this interrogatory is evasive, incomplete, and inconsistent. It is obvious that no serious attempt was made to fully and completely answer the interrogatory, despite my Order, and plaintiffs' counsel's argument that a complete answer would be made in a supplement is unpersuasive and fails to address why a complete answer has not been made already.

Order [Doc. # 56, filed 10/31/2012].

Mrs. Fann later supplemented with the following additional information:

> Supplement Response [med records already provided]:
>
> Craig Loucks, M.D. 14100 E. Arapahoe Road; 303.699.3190;
>
> Medical Center of Aurora, 1501 S. Potomac St., Aurora, CO 80112, 303 direct 695.2762;
>
> William Robertson, D.O., 14100 E. Arapahoe Rd., Suite 170, Centennial, Colorado, 303.699.3190;
>
> Colorado Athletic Conditioning Clinic, 10345 Park Glenn Way, #220, Parker, CO, 303.840.9202;
>
> Lewis, Amador, M.D., 1400 S. Potomac St., Suite 110, Aurora, CO 80112, 303.695.2762;
>
> Mark Fitzgerald, 14000 E. Arapahoe Rd., Suite 380, Centennial,

12

Colorado, 303.699.7325;

Donald Aspergren, D.C, 11 220 W. Colfax, Lakewood, Colorado, 303.232.0588;

Sky Ridge Medical center, 10101 Ridge Gate Pkwy., Lone tree, CO 80124, 720.225.1000;

Richard Fieman, 1300 S. Potomac, Suite 104, Aurora, CO 80112, 303.631.5553.

Lenore Fann's Second Supplemental Response [Doc. # 58-1] at  pp. 11-12.

Although the Second Supplemental Response provides addresses and telephone numbers for the nine doctors or practices identified, it fails to provide that information for 11 of the doctors named as healthcare providers in Mrs. Fann's initial response.  Specifically, no addresses or telephone numbers are provided for Drs. Wright, Ng, Leo, Gesquire, Anderson, Eldridge, Syn, Fisch, Taylor, and Chappelle.  Seven of those doctors--Gesquire, Anderson, Eldridge, Syn, Fisch, Taylor, and Chappelle--are identified as having treated Ms. Fann after the accident here at issue.  Lenore Fann's Response to Discovery [Doc. # 26-1] at p. 9.

The plaintiffs have attached to their Response to Supplement to Motion for Sanctions [Doc. # 70] their First through Sixth Supplemental Fed. R. Civ. P. 26(a)(1) Disclosures [Doc. # 70-1], which identify documents, including medical records, on which plaintiffs may rely.  In addition, the plaintiffs argue in the Response that "Plaintiff has in fact provided complete Responses to the discovery requests and the Court is asked to consider her disclosures, as well."  Response to Supplement to Motion for Sanctions [Doc. # 70] at p. 11.  The argument ignores the fact that Rule 26(a)(1) disclosures and interrogatories serve different purposes.  Under Rule 26(a)(1) a party must disclose only that information it "may use to support its claims and defenses," but under Rule 33 a party must respond to an interrogatory "fully in writing under

13

oath" even if the answer is harmful to the party's case.  In addition, Hartford Insurance is not required to pour over Mrs. Fann's medical records to determine the identities and contact information of her treating physicians.

The answer is evasive, which is the equivalent of a failure to answer.  Fed. R. Civ. P. 37(a)(4).

### C.  Interrogatory No. 21 to Paul Fann

Hartford Insurance argues that Paul Fann has failed adequately to answer Interrogatory No. 21.  That interrogatory and Mr. Fann's answers are reported below:

> Do you contend that Hartford is liable to you for any violation of a statute or regulation?  If so, please identify the statute or regulation that was violated, the date of the violation, the persons who committed the violation, and the material facts establishing that the violation occurred.
>
> Original Response:
>
> The Hartford may have violated the statute regulating insurers-unknown at this time.
>
> Supplemental Response:
>
> The Hartford failed to abide by its obligations under Colorado law to inform Plaintiffs of the available coverage they had under the subject insurance policy.  The Hartford further violated by failing to tender a copy of the subject policy when requested.  The Hartford also failed to pay any portion of the underinsured motorist coverage when it became aware that Plaintiffs' claims damages exceeded the insurance policy limits.  This potentially includes payment of the medical payments coverage that was available for the December 6, 2008 accident, as there was confusion between this accident and the subsequent accident that occurred May 22, 2010.
>
> The dates on which these violations occurred include those dates on which the Hartford received communications from the attorney representing Plaintiffs.  These include:  November 30, 2010,

December 2, 2010, January 14, 2011, January 25, 2011, January 27, 2011, February 16, 2011, February 22, 2011, March 9, 2011, March 15, 2011, March 17, 2011, March 25, 2011, May 25, 2011. There may be other dates that can be determined, after the deposition of Ms. Pena is taken, as well as other representatives of Defendant.

Paul Fann's Second Supplemental Responses [Doc. # 58-2] at pp. 11-12.

Plaintiffs' counsel argued at the hearing on the Motion for Sanctions:

As to Interrogatory No. 21, that's the--it's the request for any statutes or regulations--I'll be very brief. It has been responded to. It's, again, an attempt by the defendant to pigeonhole. This is a bad faith case. This is a statutory case. This is a negligence case and a breach of contract, breach of implied duties. That's what this case is about. Mr. Fann answered that interrogatory.

There is no--there is no statute, there's no provision of the Unfair Claims Practices Act that says, gosh, if you get a request to provide--by your insured to provide a copy of the policy and you blow it off, and then you don't respond to any of the inquiries, that's a violation of a statute. No such statute. That's common-law. That's negligence. That's what the plaintiff says. There is no provision, there's no regulation, there's no statute that covers the nonsense that went on in this case.

THE COURT: So, isn't the correct answer to Interrogatory 21 that there is no assertion of a violation of a statute or regulation?

MR. NEMECHEK: No, Your Honor. Because at the time, November 5th 2012, when you ordered these supplemental responses there'd been no--there'd been inadequate disclosures at least from plaintiffs' point of view--from the defendant, and there'd been no deposition of Tami Pena as to what exactly she did and what Mr. Ovalles did on behalf of Hartford. So, at that time I didn't know, neither did Mr. Fann. So, that answer is perfectly adequate, and it responds directly to--to the request.

*   *   *

Your Honor, the thing about it, there is no claim for a violation of statute or regulation, to be clear. So that's responsive to the question. There may be duties imposed by--and again, my guess is that it's just common-law duties. It's just negligence. But--but there may be some regulation that says you have to respond to an

15

> inquiry of 30 days.  There might be something like that.  I don't
> believe there's anything like that, but discovery was not complete
> at the time this response was given.

Trans. [Doc. # 78] at p. 72 line 25 through p. 74 line 25.

The answer is evasive, which is the equivalent of a failure to answer.  Fed. R. Civ. P.

37(a)(4).

### D.  Interrogatory No. 22 to Paul Fann

Paul Fann's response to Interrogatory No. 22 is similarly evasive.  The interrogatory and

Mr. Fann's responses are reported below:

> Do you contend that any provision of the policy is ambiguous or
> fails to comply with the law or public policy of any state?

> Original Response:

> The insurance policy issued by the Hartford was unclear or
> ambiguous in both the way we were supposed to pursue [an]
> uninsured/underinsured motorist claim as well as how the
> company would notify us if it was willing to pay the policy limits
> in an underlying claim.  No explanation was ever provided by the
> Hartford with regard to these policy provisions.  In addition, these
> policy provisions may change over the couple of years preceding
> policy, but we do not have copies of any notifications that the
> language had changed.  The Hartford took no steps to notify us of
> any change in the policy provisions.  Discovery is continuing.

> Supplemental response:

> In addition, the response by the Defendant and its representatives
> to inquiries made by our attorney or lack thereof made it unclear as
> to whether Defendant was limiting our right to settle the
> underlying claim.  The conduct by Defendant failed to comply
> with the Colorado law, in that an insurer is expected and/or
> required to respond to reasonable inquiries by the insureds and/or
> their legal representatives.  Since Defendant did not provide a copy
> of the subject policy and there was no communication, including
> any offer to pay an amount equivalent to the underlying settlement,
> it was unclear or ambiguous as to how the policy provisions were

16

going to be applied in this case.

Whether the Defendant was going to exercise its right to pay an amount equivalent of the settlement and pursue a recovery against tortfeasor was not clear.  The Hartford provided no clarification as to the policy provisions governing underinsured motorist claims. In this regard, none of the claims representatives from the Hartford provided any explanation or further information concerning the subject policy and its provisions, or any special procedures concerning the underinsured motorist claim.  Further, there were multiple occasions on which the representatives from Defendant failed to respond to written and telephonic communications from counsel concerning these policy provisions.  When a written response was received from Defendant, the specific policy provisions and language within the policy were not explained.

Paul Fann's Second Supplemental Responses [Doc. # 58-2] at pp. 12-13.

Plaintiffs' counsel muddied the waters further during the hearing on the Motion for

Sanctions:

The same argument can be made with respect to Interrogatory No. [22], "Is there a claim that the policy is ambiguous?"  Well, I guess if the defendant had provided a copy of the policy in the early days, but there is no claim.  I think the interrogatory was responded to as fully and completely as the plaintiffs could. There's no--there's no reason to issue an order or impose sanctions.

There's not been a claim made in the complaint.  There's not been a claim made in terms of responses to the discovery that the policy itself is vague or ambiguous nor is there a request that it be construed against the Hartford.  The plaintiffs were just trying to get a copy of the applicable policy for the period in which this loss occurred.  That's all they were doing.

Trans. [Doc. # 78] at p. 76 line 16 through p. 77 line 6.

It is unclear whether the plaintiffs' claim an ambiguity exists in the policy or that it

violates the law or public policy.  Assuming that they make such a claim, as the written response

indicates, the plaintiffs were required at a minimum to specifically identify the provisions (by

17

contract section or the like) which they claim are ambiguous or unlawful and to identify some

statute, regulation, case, or other expression of public policy supporting their claim.  They did

none of that.

The answer is evasive, which is the equivalent of a failure to answer.  Fed. R. Civ. P.

37(a)(4).

**E.  Interrogatory Nos. 7 and 9 to Lenore Fann**

Hartford Insurance complains that Mrs. Fann has not provided a full response to

Interrogatories 7 and 9 concerning her trauma or injuries.  The interrogatories and their

responses are reported below:

INTERROGATORY NO. 8:[5]

Please identify and describe in detail every car accident or other
incident involving physical trauma that has caused you any injury
or harm, including the date of each accident or incident, a
description of each responsive accident or incident, and a
description of the severity of the injury or harm that resulted, and
the extent of your recovery.

Response:

I was injured in the vehicle accident which occurred on December
6, 2008.  I tore right rotator cuff, had whip Lash to my neck and
back.  Rotator cuff required two surgeries and caused severe
stomach bleeding after the first surgery.

I was injured in a motor vehicle accident on May 10, 2010,
injuring my neck and mid and low back.

I injured my head and neck on May 2, 2012.

I injured my hip on October 31, 2012.

_____

[5]The plaintiffs have again renumbered the interrogatory for unexplained reasons.

18

Supplemental response:

I noticed that there was a typographical error in my original responses, as the second automobile accident occurred on May 22, 2010.  It is my understanding that the Hartford had information concerning this accident, as the claims records document the correct date of that accident.  I an [sic] some increase in my neck and shoulder pain after the May 22, 2010 accident.

I also sustained an injury on May 2, 2012 when I was walking into Swedish medical center in Englewood, Colorado.  The automatic door struck my head and caused injury to my head and neck.

I fell at home on October 31, 2012, fracturing my hip.

INTERROGATORY NO. 9:

Please identify and describe all physical, mental, and emotional disabilities you had immediately before the Incident, or that you have developed since the Incident, including but not limited to any chronic diseases or injuries caused by trauma.

Response:

Before the accident, I had diabetes.  I also suffered the stroke and underwent surgery for a heart bypass.  I broke my right foot and was diagnosed with tennis elbow.

After the accident, I have had difficulty reaching above my head, reduce strength, particularly in my right arm.  I also suffered severe stomach bleeding on the first day I had rotator cuff surgery. I have frequent pain in my neck and back.

I also have had a stroke and had blood clots in arteries in the neck and legs.

Supplemental Response:

Since the accident, I was injured in the accident of May 22, 2010. This aggravated the condition of my neck and I required physical therapy.

I injured my neck, as well as my head in the accident of May 2, 2012.  I received treatment, including a cervical surgery for my

neck injury.

I fractured my hip for which I required a total hip replacement on
or about October 31, 2012.  I will require physical therapy and
occupational therapy for this injury.

Lenore Fann's Second Supplemental Response [Doc. # 58-1] at  pp. 12-14.

Although on the surface the responses seem generally adequate, except for Mrs. Fann's

total failure to discuss "the extent of [her] recovery," id. at Interrogatory 7 [renumbered as 8],

plaintiffs' counsel's comments at the hearing on the Motion for Sanctions makes clear that the

answers are not full and complete:

MR. NEMECHEK:  . . .  As to--we spent a lot of time about the
medical records, subsequent trauma.  I will represent to the court
that plaintiff Lenore Fann needs--and I need some time to sit down
with her and talk about--go through each of these doctors.  There is
a list in terms of the supplemental disclosures of multiple doctors,
Sky Ridge Medical Center, Aurora Medical Center.

Again, most of it does not relate to her treatment for her claimed
injuries in this case, but Mrs. Fann is going to need to supplement
her interrogatory and talk about here's the issues that I'm claiming.
And again, I think it's cervical spine and shoulder in this case.
That's really all that she's claiming.  But defendants are entitled to
either hear from her in her deposition or a supplement in the
interrogatories.  And with reference to any trauma, plaintiff Lenore
Fann has answered that to the best of her ability, but--but requires
the opportunity to supplement it and limit her claim in this case.

Just for the record, I don't think there's any claim for future
medical expenses, and there will not be one made, certainly on
behalf of Ms. Fann, because it's just--it's too complicated and
there's no basis given what these medical records are and some of
her health conditions after the accident.  But, certainly, defendants
are entitled to ask her that and supplement.  There shouldn't
sanctions imposed (unintelligible) particularly an issue sanction.

Trans. [Doc. # 78] at p. 77 line 8 through p. 78 line 11.

Contrary to the argument of counsel, Mrs. Fann does claim future medical expenses. Scheduling Order [Doc. # 17] at p. 4 (claiming "Future medical expenses-$25-50,000.00").  She also makes a claim for injuries resulting from the underlying accident in an amount exceeding $500,000.  Hartford Insurance is entitled to a full answer to the interrogatories addressing her physical condition and injuries.  Plaintiffs' counsel acknowledged that this information has not been fully provided.

The responses to Interrogatories 7 and 9 are incomplete and evasive.

### III.  APPROPRIATE SANCTIONS

As a sanction for the plaintiffs' failures to provide full discovery responses and to comply with my orders compelling full answers, Hartford Insurance requests the imposition of the following sanctions:

1.  "[T]hat it is established for purposes of this action that Plaintiffs did not provide Hartford with any advance notice of the settlement";

2.  Enter an order that the "injuries, bills, and damages reflected in information responsive to" Interrogatory No. 5 (requesting the identities and contact information for Mrs. Fann's healthcare providers) "show that Ms. Fann did not suffer injury or damage compensable under the policy in the subject car accident";

3.  "[T]hat Hartford did not violate any statute or regulation in handling Plaintiffs' insurance claims";

4.  "[T]hat the policy is not ambiguous and does not violate the law or public policy of any state"; and

5. Imposing "an adverse inference to the effect that Ms. Fann's injuries are attributable to and were not caused by the subject accident but instead only by other events, accidents, or traumas." Supplement to Motion for Sanctions [Doc. # 58] at pp. 7, 9, 10, and 12.

Counsel for Hartford Insurance argued at the hearing on the Motion for Sanctions that the requested sanctions do not amount to the dismissal of the plaintiffs' claims. Trans. [Doc. # 78] at p. 23 line 18 through p. 24 line 3; p. 31 lines 10 through14; and p. 36 lines 5 through 15. They are extreme sanctions, however, which may have the consequence of foreclosing some or all of the plaintiffs' claims or remedies. I view the sanctions as potentially dispositive, requiring that I make a recommendation to the district judge.

I have entered two orders requiring the plaintiffs to make full discovery responses. Order [Doc. # 30] (compelling the plaintiffs to make "full and complete discovery responses" and imposing monetary sanctions under Rule 37(a)(5) against the plaintiffs and their counsel); and Order [Doc. # 56] (giving the plaintiffs "one final opportunity to meet their discovery obligations and warning the plaintiffs and their counsel that "failure to comply with this order . . . will result in the imposition of severe sanctions"). Rule 37(b)(2), Fed. R. Civ. P., provides:

> **(2)** *Sanctions in the District Where the Action is Pending.*
>
> **(A)** *For Not Obeying a Discovery Order.* If a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>
> **(I)** directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> **(ii)** prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated

matters into evidence;

**(iii)**  striking pleadings in whole or in part;

**(iv)**  staying further proceedings until the order is obeyed;

**(v)**  dismissing the action or proceeding in whole or in part;

**(vi)**  rendering a default judgment against the disobedient party; or

**(vii)**  treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Accord FDIC v. Daily, 973 F.2d 1525, 1530 (10th Cir. 1992)(recognizing that Rule 37(b)(2) permits a court to impose sanctions, including dispositive sanctions, against a party who fails to obey an order to provide discovery or respond to interrogatories or produce documents).

In addition, in Ehrenhaus v. Reynolds, 965 F.2d 916, 920-21 (10th Cir. 1992), the circuit court of appeals instructed:

> Determination of the correct sanction for a discovery violation is a fact-specific inquiry that the district court is best qualified to make.
>
> *     *     *
>
> The district court's discretion to choose a sanction is limited in that the chosen sanction must be both just and related to the particular claim which was at issue in the order to provide discovery.  Before choosing dismissal as a just sanction, a court should ordinarily consider a number of factors, including: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; (5) the efficacy of lesser sanctions.  Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction.

(Internal quotations and citations omitted.)

This is an extreme case which calls for the imposition of serious sanctions.  First, Hartford Insurance has been seriously prejudiced by the plaintiffs' repeated failures to provide

discovery as ordered.  Among other things, the plaintiffs' failure to identify the date on which

they gave notice to Hartford Insurance of their settlement with the underlying tortfeasor has

precluded Hartford Insurance from developing (or abandoning) its principal defense that the

plaintiffs' claims are barred by their failure to comply with the notice-of-settlement provision of

the insurance contract.  In addition, Hartford Insurance has been precluded from fully

investigating which, if any, of Mrs. Fann's many ailments pre-existed the underlying accident or

were caused or exacerbated by subsequent injuries.  The plaintiffs' have stubbornly refused to

abandon claims that apparently have no factual basis, including whether the insurance policy

violates a statute or regulation or is ambiguous, requiring Hartford Insurance to prepare defenses

where none may be required.

The plaintiffs failure to provide discovery has disrupted the judicial process.  I have been

required, twice, to order the plaintiffs to respond to obviously relevant discovery requests and

now, in the face of their defiance of those orders, to address the issue of sanctions.  Meanwhile,

the efforts of Hartford Insurance to develop its defense of the plaintiffs' claims through normal

discovery channels has been thwarted.

The plaintiffs and their counsel, alone, are responsible for the discovery misconduct.

There is no indication that, with reasonable diligence, the plaintiffs are unable to comply with

my two previous orders compelling discovery.  For example, plaintiffs' counsel indicated at the

hearing that the names and contact information for Mrs. Fann's healthcare providers may be

uncovered by reviewing documents disclosed by the plaintiffs under Rule 26(a)(1).  But no

explanation is offered as to why the plaintiffs did not provide that information to Hartford

Insurance in their response to appropriate interrogatories, nor have the plaintiffs shown that all

records necessary to derive the answer have been provided or that "the burden of deriving or ascertaining the answer will be substantially the same for either party" in order to invoke the provisions of Fed. R. Civ. P. 33(d).  Similarly, it is undisputed that Hartford Insurance is entitled to know the date of notice of settlement, but the plaintiffs refuse to disclose it.  Although plaintiffs' counsel acknowledges that he is the person who gave the notice, he argues that "[n]either Mr. nor Mrs. Fann know the exact date. Trans. [Doc. # 78] at p. 47 lines 7-8.  This is improper obfuscation.  See Resolution Trust Corp. v. Williams, 162 F.R.D. 654, 658 (D. Kan. 1995)(noting that "[c]ounsel has an obligation to assure that the client complies with the discovery obligations and court orders and to assist the client in that compliance").

I warned the plaintiffs in my second order that their failure to provide full discovery responses would result in the imposition of severe sanctions.  Order [Doc. # 65] at p. 3.

I attempted to impose a lesser sanction when I awarded Hartford Insurance its reasonable expenses in making its Motion to Compel, but even in the face of a lesser sanction the plaintiffs have failed to provide discovery as required under the Federal Rules and as I have ordered. Without the discovery identified in its Supplement to Motion for Sanctions, Hartford Insurance is improperly prevented from preparing its defense.  I ordered the plaintiffs to provide the discovery.  They did not.  I imposed a monetary sanction and again ordered that the discovery be provided, without success.  No lesser sanction than that sought by Hartford Insurance will address the plaintiffs' misconduct.

Finally, the sanctions sought are just under the circumstances and are directly related to the discovery which the plaintiffs have wrongfully failed to provide.

I respectfully RECOMMEND:[6]

(1)     The Motion for Sanctions [Doc. # 42] and Supplement to Motion for Sanctions [Doc. # 58] be GRANTED; and

(2)     The following sanctions be imposed against the plaintiffs for their failures to provide discovery:

(a)  The plaintiffs be prohibited from supporting their claim that they gave notice of settlement with the underlying tortfeasor or rebutting Hartford Insurance's defense that no prior notice of that settlement was given;

(b)  The plaintiffs be prohibited from supporting their claim that the injuries and damages suffered by Lenore Fann are the result of the auto accident with Susan Visalli on December 6, 2008, and are compensable under the UIM policy between the plaintiffs and Hartford Insurance;

(c)  The plaintiffs be prohibited from supporting the claim that Hartford Insurance violated any statute or regulation in handling plaintiffs' insurance claim;

---

[6]Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections.   A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  Makin v. Colorado Dept. of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

(d)  The plaintiffs be prohibited from supporting their claim that the insurance policy issued by Hartford Insurance and at issue in this case is ambiguous or violates the law or public policy of any state; and

(e)  Instruct the jury that it is established that Mrs. Fann's injuries are not attributable to and were not caused by the auto accident with Susan Visalli on December 6, 2008, but instead are the result of other events or accidents.

Dated April 16, 2013.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge